UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**CONOR S. YEOMANS,** *individually*
*and on behalf of all others similarly situated*,

    Plaintiff,

v.

**R.T.G. FURNITURE CORP.,**

    Defendant.

_____/

CASE NO:

## CLASS ACTION COMPLAINT

Plaintiff Conor S. Yeomans, by Counsel and on behalf of himself and all others similarly situated, and for his Class Action Complaint against R.T.G. Furniture Corp., alleges the following claims:

### I.  NATURE OF THE CASE

1. Plaintiff brings this action against Defendant for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–1681x. The FCRA imposes several important requirements on employers that use consumer reports in the employment context (commonly known as a "background check"), which are designed to protect consumers like Plaintiff.

2. Defendant R.T.G. Furniture Corporation is a corporate entity with retail locations throughout the United States, including in this District and Division. R.T.G. sells furniture in those retail locations, and fills its staffing needs with consumers like Plaintiff. As part of their hiring processes, R.T.G. and its subsidiaries use background checks to make employment decisions. Because such employment decisions are based in whole or in part on the contents of the background checks, R.T.G. is obliged to adhere to certain requirements of the FCRA.

3. R.T.G. purchases its background checks from non-party First Advantage. In addition to performing the background searches for R.T.G., First Advantage also "grades" or "adjudicates" the report results, assigning grades of "Eligible," "Ineligible," or "Review" (or labels similar) after comparing the background check results to hiring criteria R.T.G. provides to First Advantage.

4. By design, the FCRA protects the private reporting of consumers' information by expressly prohibiting the use of that information unless a user satisfies one of the limited purpose requirements for such use. 15 U.S.C. § 1681b.

5. Additionally, the FCRA imposes even tighter privacy restrictions on the use of a consumer report for an employment purpose. While some uses are permitted based on the purpose alone, a person may not use a consumer report for an employment purpose until and unless it meets the rigorous requirements of 15 U.S.C. § 1681b(b).

6. These rights and restrictions cannot be waived, and are substantive rather than simply procedural.

7. When using criminal background reports for employment purposes, employers must, before declining, withdrawing, or terminating employment based in whole or in part on the contents of the report, provide job applicants like Plaintiff with a copy of their respective background reports as well as a written summary of their rights under the FCRA.

8. Providing a copy of the criminal background report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based reports. The FCRA is designed to permit

individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision.

9. Even where reports are accurate, notice is still mandated because it allows applicants to preemptively discuss any negative information with the employer before a hiring decision is made.

10. Plaintiff brings a nationwide class claim against R.T.G. under 15 U.S.C. § 1681b(b)(3) because, as a systematic omission in its hiring process, R.T.G. failed to provide Plaintiff and other consumers with a copy of the criminal background report or a summary of rights under the FCRA before taking an adverse employment action against them.

## II.   JURISDICTION AND VENUE

11. The Court has federal question jurisdiction under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

12. Venue is also proper in this Court because R.T.G. can be found in this District. 28 U.S.C. § 1391(c). Among other things, R.T.G. maintains its principal place of business in this District and Division.

## III.   PARTIES

13. Plaintiff Conor S. Yeomans is a "consumer" as protected and governed by the FCRA.

14. Defendant R.T.G. is a Florida entity that operates retail locations throughout the United States, including within this District and Division. At all pertinent times, R.T.G. was a "user" of "consumer reports" for "employment purposes" as the FCRA defines those terms.

## IV.   FACTUAL ALLEGATIONS

### A.     Plaintiff's Acceptance Of Offer Of Employment With R.T.G.

15.     Plaintiff applied for a position with an R.T.G. location in Richmond, Virginia in June of 2017.

16.     R.T.G. offered Plaintiff the position, and he accepted, which was contingent on his passing a background check.

17.     Prior to the job offer, in the course of the application process, Plaintiff honestly disclosed his criminal history to R.T.G.

18.     R.T.G. ordered a background check on Plaintiff from First Advantage around June 19, 2017. First Advantage completed the check around June 21.

19.     As part of its arrangement with R.T.G., First Advantage not only performs the background checks on R.T.G.'s applicants but also adjudicates the results against hiring criteria R.T.G. provides to First Advantage. In Plaintiff's case, First Advantage adjudicated Plaintiff as "Ineligible" because of criminal history it attributed to him.

20.     Alternatively, someone at R.T.G. adjudicated Plaintiff as "Ineligible" after viewing the background check results from First Advantage but, either way, the assignment of the Ineligible grade sets in motion an automatic process for notifying Plaintiff that R.T.G. would not employ him.

21.     Whomever adjudicated Plaintiff's report, the Ineligible score was assigned on June 21, 2017. On June 22, R.T.G. emailed Plaintiff and stated that he would not be hired. Discovery will show that R.T.G. based this decision on the report First Advantage provided, as it incorrectly stated that Plaintiff had been convicted of a felony.

22.     The email did not include a copy of the First Advantage report about Plaintiff or a written summary of his FCRA rights.

23. After reading the email, Plaintiff contacted the manager at R.T.G. that interviewed him to question the decision. The manager confirmed that the criminal history First Advantage reported barred Plaintiff from employment at R.T.G., and that the decision was final and would not be changed.

24. The manager would not provide Plaintiff with a copy of his First Advantage report despite confirming that the criminal history was the reason R.T.G. was rejecting him for employment.

25. Discovery will show that the entry of the "Ineligible" grade by First Advantage automatically triggers the sending of a notice letter ("Letter 1") designed to comply with Section 1681b(b)(3)'s "pre-adverse action" notice requirement. Discovery will also show that First Advantage sends this letter to consumers like Plaintiff automatically and without any communication (other than possibly the communication of the Ineligible grade) from R.T.G.

26. First Advantage sent Letter 1 to Plaintiff, dated June 21, 2017, which arrived some days after Plaintiff received the email from R.T.G. denying him employment and his discussions with the R.T.G. manager who confirmed that the reason Plaintiff was being denied employment was the results of the background check. Letter 1 included a copy of Plaintiff's First Advantage report, which was the first opportunity Plaintiff had to review it and learn of First Advantage's incorrect reporting of a felony conviction.

27. Discovery will show that R.T.G., as a matter of course, dispatches the rejection email the same day it or First Advantage adjudicates candidates as Ineligible, well before the candidates have any opportunity to review the reports about them or the summaries of their FCRA rights.

28.     Though the email cryptically states that "[t]he post offer employment process was not satisfactorily completed and we are unable to move forward with the employment process," such a statement is at best misleading. R.T.G. rejected Plaintiff because of the contents of his background report, not for some unexplained reason.

29.     Once First Advantage assigns the grade to the report, discovery will show that the results, including the score of "Ineligible," are made available electronically to R.T.G..

30.     In reality, the adjudication by First Advantage is the final step in R.T.G.'s hiring process. No other action is required by either R.T.G. or First Advantage to cause the rejection of the consumer's application. Discovery will show the rejection email goes out automatically and as a matter of course when the Ineligible adjudication is applied.

31.     At the point of the adjudication of "Ineligible" by First Advantage, an "adverse action" had been taken on behalf of R.T.G.—the adjudication as well as the effective final decision to bar Plaintiff from employment. No other action was necessary thereafter to deny Plaintiff employment.

32.     The First Advantage report was inaccurate. First Advantage improperly reported to R.T.G. that Plaintiff had been convicted of a felony in Orange County California, which was not true.

33.     R.T.G.'s failure to provide Plaintiff with timely notice robbed him of the ability to discuss or dispute the inaccuracy with R.T.G. and First Advantage before R.T.G. took the adverse action against him.

34.     Due to this misreported felony conviction, First Advantage adjudicated Plaintiff as "Ineligible" under R.T.G.'s hiring criteria, which means R.T.G. would not hire him. As the

automatic process demands, R.T.G. sent the rejection email to Plaintiff on June 22, and First Advantage sent Letter 1 to Plaintiff that arrived some time later.

35. But the fact that Plaintiff was told by R.T.G. that he would not be hired in the June 22 email or later by the R.T.G. manager was not the adverse hiring decision that triggered the notice requirement of Section 1681b(b)(3). That decision was the adjudication of Ineligible by either First Advantage or R.T.G. on June 21.

36. Because that decision was made before Plaintiff was provided with a copy of his report and written summary of his FCRA rights, R.T.G. violated Section 1681b(b)(3) when it or First Advantage adjudicated Plaintiff as Ineligible. That First Advantage may have adjudicated Plaintiff Ineligible (as opposed to R.T.G. adjudicating him) makes no difference as to the liability of R.T.G. under Section 1681b(b)(3). R.T.G. is responsible for ensuring the pre-adverse-action notice is provided before the adverse action takes place.

**B.    R.T.G.'s Practices and Policies.**

37. R.T.G. has created and implemented national, uniform hiring and staffing policies, procedures, and practices under which it and its subsidiaries operate. Those policies, procedures, and practices cover the use of "background checks" or "consumer reports" to screen potential employees.

38. R.T.G. routinely uses consumer reports to screen prospective employees, using consumer reports prepared by First Advantage. Either First Advantage or R.T.G. will promptly review the consumer reports and grade the report as "Ineligible" or "Eligible" (or something similar). As a matter of practice, R.T.G. regularly fails to provide copies of consumer reports to job applicants against whom it takes an adverse action based in whole or part on consumer reports, before taking that adverse action.

39. As a matter of practice, R.T.G. regularly fails to provide copies of the FTC or CFPB notice of rights to job applicants against whom it takes an adverse action based in whole or part on a consumer report, before taking that adverse action.

40. As a matter of course, R.T.G. uses the same business process for obtaining and using consumer reports, and for the "adjudication" of employment applications as it did with Plaintiff and members of the Class described below. In authorizing First Advantage to mail pre-adverse action letters at some point after an "Ineligible" adjudication but not prior to R.T.G. taking an adverse action, R.T.G. deprives consumers of any reasonable time period by which to dispute or discuss any inaccurate or derogatory information in their background reports before a final hiring decision is made.

41. Because R.T.G. or First Advantage grade reports as "Ineligible" and *then* has First Advantage send the Section 1681b(b)(3) notice on R.T.G.'s behalf to R.T.G. applicants, R.T.G. violates Section 1681b(b)(3) each time because the adverse action is final before First Advantage ever mails a notice to an applicant.

42. As a result of these FCRA violations, R.T.G. is liable to Plaintiff, and to each Class member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

43. R.T.G.'s conduct and omissions were willful. Because the FCRA was enacted in 1970, Defendant has had years to become compliant but has failed to do so.

44. R.T.G., a nationwide employer, was aware of obligations under the FCRA as they relate to employment because it hired First Advantage not only to perform its background checks but also to (attempt to) provide R.T.G.'s adverse-action notices to job applicants. R.T.G.

therefore knew of the requirements imposed upon it by the FCRA, and failed to craft a system that would ensure compliance with those requirements.

**C.     Additional Concrete Harm.**

45.     By implementing these policies, R.T.G. deprived Plaintiff and Class Members of their congressionally mandated right to information to which Congress has deemed them entitled.

46.     "Section 1681b(b)(3), like § 1681b(b)(2)(A), provides the consumer with a legally cognizable right to specific information. Specifically, . . . [consumers have] the right to receive a copy of the report on which the adverse action is based and a summary of their rights under the FCRA before the contemplated adverse employment action is taken." *Thomas v FTS USA, LLC*, 193 F. Supp. 3d 623, 637–38 (E.D. Va. 2016).

47.     "Relatedly, [§ 1681b(b)(3)] provides consumers against whom adverse employment action is contemplated with a right to have time to discuss the reports with their current or prospective employers and to correct the reports if necessary before the contemplated adverse action is taken. *Id*. at 638.

48.     The protections established by § 1681b(b)(3) "are clearly substantive, and neither is technical nor procedural." *Id*. at 632.

49.     By taking adverse action against Plaintiff and the Class Members without first providing them with copies of their consumer reports, R.T.G. denied Plaintiff and the Class Members information to which they were specifically entitled under the FCRA.

50.     When it took adverse action against Plaintiff and the Class Members without providing them sufficient time to discuss the consumer reports and to correct the reports if

necessary, R.T.G. denied Plaintiff and the Class Members the opportunity that Congress provided through the FCRA.

51. The informational injuries and the injury resulting from the deprivation of the opportunity to explain and discuss the issues raised by derogatory information in their consumer reports suffered by Plaintiff and the Class Members as a result of R.T.G.'s violations of § 1681b(b)(3) are particularized because those injuries happened to Plaintiff and each Class Member.

52. The informational injuries suffered by Plaintiff and the Class Members as a result of R.T.G.'s violations of § 1681b(b)(3) are real and concrete because "it is well-settled that Congress may create a legally cognizable right to information, the deprivation of which will constitute a concrete injury [and] [b]y extension, it is well within Congress' power to specify the form in which that information must be presented." *Thomas*, 193 F. Supp. 3d at 635.

53. With Section 1681b(b)(3), Congress identified a substantial risk of harm caused by the dissemination of inaccurate or misleading information regarding consumers, who could potentially suffer an adverse and often secret employment decision without an opportunity to address the underlying information or to know their rights. *See* Sen. Rep. No. 104-185, 35 (Dec. 14, 1995).

### V.   LEGAL REQUIREMENTS

54. Section 1681b(b)(3)(A) of the FCRA regulates the conduct of any person who uses a "consumer report" to take an adverse action against any employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report,

the person intending to take such adverse action shall provide to the consumer to whom the report relates --

    (i)    a copy of the report; and

    (ii)    a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

55. The purpose of § 1681b(b)(3)(A) is to provide a prospective or current employee a sufficient amount of time to review the consumer report, correct any inaccuracies, to notify the prospective employer of these inaccuracies before an adverse action is taken and generally to discuss the contents of the report with the prospective employer.

56. This statutory requirement was enacted by Congress expressly to protect consumer privacy by restricting the circumstances under which a person (in this instance R.T.G.) could obtain and use a consumer's personal information consumer report.

57. In enacting this FCRA provision, Congress also expressly sought to guarantee important material information be provided to Plaintiff and consumers like her with respect to employer use of a consumer report for an employment adverse action.

58. Plaintiff and each putative class member has been substantively harmed and injured by R.T.G. in the violation of their personal privacy and in the deprivation of the congressionally mandated information.

### VI.  **DEFENDANT ACTED WILLFULLY**

59. Defendant knew or should have known about their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission and Consumer Financial Protection Bureau. Defendants obtained or had available substantial written materials, which apprised them of their duties under the FCRA.

60. Defendant obtained or had available substantial written materials which informed them of their duties under the FCRA.

61. The written disclosure which precedes a written authorization for a prospective employer to obtain a consumer report for employment purposes must be presented in a clear, conspicuous, stand-alone form. *Thomas v. FTS USA, LLC*, No. 3:13-CV-825, 2016 WL 3653883, at *7 (E.D. Va. June 30, 2016); *Milbourne v. JRK Residential Am., LLC*, 92 F. Supp. 3d 425, 434 (E.D. Va. 2015).

62. Defendant knew that it had an obligation to provide a stand-alone disclosure and obtain the consumer's authorization before procuring a consumer report.

63. The FCRA requires that, prior to procuring consumer reports, employers must certify to the consumer reporting agency that they will comply with the FCRA's disclosure and authorization requirements. *See* 15 U.S.C. § 1681b(b)(1).

64. Before a person takes an adverse employment action, it must provide two documents to the prospective employee. *See* Letter from Clark W. Brinckerhoff to Erick J. Weisberg (June 27, 1997), FTC Informal Staff Letter ("Brinckerhoff Letter II") (noting that taking action a period of five business days after notice "appears reasonable."); *Williams v. Telespectrum, Inc.,* Civil Action No. 3:05cv853 (E.D. Va. 2006), Report and Recommendation of Magistrate Judge Hannah Lauck dated November 7, 2006, adopted by Judge R. Payne January 8, 2005, (holding that a user of a consumer report must provide to the consumer a copy of the report and disclosure of rights a sufficient amount of time before it takes adverse action so that the consumer can rectify any inaccuracies in the report, and simultaneous provision of the report does not satisfy this requirement); *Kelchner v. Sycamore Manor Health Center,* 305 F. Supp. 2d 429, 435 (M.D. Pa. 2004); (holding a reasonable period for the employee to respond to disputed

information is not required to exceed five business days following the consumers receipt of the consumer's report from the employer); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07cv469 (E.D. Va. 2009) (providing, by Consent Order, ChoicePoint mailing of Adverse Action Notices on behalf of its customers shall occur no earlier than five business days after the mailing of the Pre-adverse Action Notices).

65. To ensure knowing compliance with the FCRA, Congress requires that before any consumer reporting agency may provide consumer reports on an applicant, the reporting agency must have obtained a certification from the employer that it will comply with 15 U.S.C. § 1681b(b)(3) whenever the employer decides to take adverse action based in whole or in part on the consumer report. 15 U.S. C. § 1681b(b)(1)(A).

66. Discovery will show that R.T.G. knowingly executed a certification providing that it would comply with the various provisions of the FCRA whenever adverse action was contemplated or taken based in whole or in part on information contained in a consumer report.

67. Despite its certification, R.T.G. knowingly violated 15 U.S.C. § 1681b(b)(3).

68. Moreover, the fact that R.T.G. has First Advantage send FCRA notice letters to applicants R.T.G. rejects for employment confirms that R.T.G. is aware of the FCRA and the requirements the statute imposes on employers like R.T.G. R.T.G. has simply chosen not to abide by the FCRA's requirements.

69. Despite knowing of these legal obligations, R.T.G. acted consciously in breaching its known duties and depriving Plaintiff and other members of the Class of their rights under the FCRA.

70. As a result of these FCRA violations, Defendant is liable to Plaintiff and to each Class Member, for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. §

1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2) for the violations alleged herein, and for attorneys' fees and costs pursuant to §§ 1681n and 1681o.

## VII. CLASS ACTION ALLEGATIONS

71. Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681b(b)(3), Plaintiff brings this action for herself and on behalf of a class (the "Adverse Action Class"), defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who submitted an employment application or other request for placement to R.T.G. or any of its subsidiaries and received a conditional job offer; (b) who were the subject of a consumer report which was used by R.T.G. to make an employment decision from two years before the filing of this Action through the date the class list is prepared; (c) about whom was inserted an "Ineligile" or "Review" adjudication in the First Advantage system; and (d) to whom R.T.G. did not provide a copy of the consumer report and summary of rights as required by 15 U.S.C. § 1681b(b)(3) at least five business days before the date the consumer's report was first adjudicated with the "Ineligible" or "Review" flag.
>
> Specifically excluded from this Class are: (a) all federal court judges who preside over this case, their spouses and persons who work for them; (b) all persons who elect to exclude themselves from the Class; (c) all persons who have previously executed and delivered to R.T.G. releases of all their claims for all of their Class claims; and (d) Plaintiffs' counsel and persons who work for them or are related to them by marriage or as immediately family.

72. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. Based on information and belief, the Class is comprised of at least thousands of members who are geographically dispersed throughout the country so as to render joinder of all Class Members impracticable. The names and addresses of the Class Members are identifiable through documents maintained by R.T.G. or First Advantage, and the Class Members may be notified of the pendency of this action by published and/or mailed notice.

73. **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Class. The total focus of the

litigation will be R.T.G.'s uniform conduct and procedures; whether rejecting an applicant for employment when a background report is adjudicated as "Ineligible" or "Review" is an "adverse action" subject to the FCRA notice requirements; whether R.T.G. provided the required notices; when it did so; and, whether R.T.G. acted willfully in its failure to design and implement procedures to assure compliant delivery and/or timing of these notices. The appropriate amount of uniform statutory and/or punitive damages under 15 U.S.C. § 1681n is a common question for members of the Class.

74. **Typicality.** Plaintiff's claims are typical of the other Class Members' claims. As described above, R.T.G. uses common practices and automated systems in committing the conduct that Plaintiff alleges damaged him and the Class. Plaintiff seeks only statutory and punitive damages for his classwide claims and, in addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class. R.T.G. uniformly breached the FCRA by engaging in the conduct described above, and these violations had the same effect on each member of the Class.

75. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests coincide with, and are not antagonistic to, other Class Members' interests. Additionally, Plaintiff has retained counsel experienced and competent in complex, commercial, multi-party, consumer, and class-action litigation. Plaintiff's Counsel has prosecuted complex FCRA class actions across the country.

76. **Superiority.** Questions of law and fact common to the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome

and expensive given the complex and extensive litigation necessitated by R.T.G.'s conduct. It would be virtually impossible for the members of the Class to individually, effectively redress the classwide wrongs done to them, particularly in light of the fact that the claims are in part based on the failure of R.T.G. to give Class Members the proper notice. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.

77. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by R.T.G.'s conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

### VIII.  CAUSES OF ACTION

### COUNT ONE: VIOLATIONS OF 15 U.S.C. § 1681b(b)(3)(A)

78. Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

79. R.T.G.'s failure to provide Plaintiff and members of the Adverse Action Class with a copy of the consumer report upon which it based its decision to take the adverse action, prior to taking such action, violated 15 U.S.C. § 1681b(b)(3)(A)(i).

80. Likewise, R.T.G.'s failure to provide Plaintiff and members of the Adverse Action Class the mandated FTC/CFPB Summary of FCRA Rights, prior to taking such action, violated 15 U.S.C. § 1681b(b)(3)(A)(ii).

81. R.T.G.'s creation of a system in which First Advantage mails pre- and final adverse action letters after hiring decisions are finally, already made robs consumers of a reasonable opportunity to dispute inaccurate information in their background reports, further violating Section 1681b(b)(3).

82. R.T.G.'s obtaining and use of Plaintiff's and Class Members' consumer reports without compliance with § 1681b(b)(3) violates 15 U.S.C. § 1681b(f).

83. The conduct, action, and inaction of R.T.G. were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

84. Plaintiff and other members of the Adverse Action Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from R.T.G. in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n.

## IX.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class pray for relief as follows:

1. That an order be entered certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his Counsel to represent the Class;

2. That judgment be entered for the proposed Class against Defendant R.T.G. for statutory damages and punitive damages for violation of 15 U.S.C. § 1681b, pursuant to 15 U.S.C. § 1681n;

3. That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and,

4. That the Court grant such other and further relief as may be just and proper, including but not limited to any equitable relief that may be permitted.

**A TRIAL BY JURY IS DEMANDED.**

**Dated April 5, 2018**

                                      Respectfully submitted,

By: */s/ Marc R. Edelman*
    Counsel

Marc R. Edelman
**MORGAN & MORGAN P.A.**
201 N. Franklin Street, Suite 700
Tampa, Florida 3306
Main No.: 813-577-4722
Facsimile: 813-257-0572
Email: medelman@forthepeople.com

Leonard A. Bennett (*pro hace vice forthcoming*)
Craig C. Marchiando (*pro hace vice forthcoming*)
Elizabeth W. Hanes (*pro hace vice forthcoming*)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Ste. 1-A
Newport News, VA  23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email:  lenbennett@clalegal.com
Email: craig@clalegal.com
Email: elizabeth@clalegal.com

***Counsel for Plaintiff and the Class***